UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO JACKSON,<br>CDCR No. AK-4312,<br><br>         Plaintiff,<br><br>vs.<br><br>P. COVELLO; J. JUAREZ;<br>SERGEANT ANDERSON;<br>CORRECTIONAL OFFICER<br>MARTINEZ; A. CANEDO; A.<br>TAYLOR; GARCIA; R. FLORES,<br><br>         Defendants. | Case No.: 3:19-cv-02444-JAH-MDD<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; (2) DENYING MOTION TO APPOINT COUNSEL; (3) DENYING MOTION FOR PRELIMINARY INJUNCTION; and (4) DISMISSING CLAIMS AGAINST DEFENDANTS FOR FAILURE TO STATE A CLAIM** |

   Ricardo Jackson ("Plaintiff"), currently incarcerated at the California Substance Abuse Treatment Facility ("CSATF"),[1] located in Corcoran, California, and proceeding pro se, has filed a civil rights complaint ("Compl.") pursuant to 42 U.S.C. § 1983 (*See* ECF No. 12). Plaintiff has also filed a Motion to Appoint Counsel (ECF No. 15), Motion

---

[1] At the time Plaintiff filed this action he was housed at the Richard J. Donovan Correctional Facility ("RJD"). However, on January 26, 2020, Plaintiff filed a notice of change of address indicating that he is currently housed at CSATF. (*See* ECF No. 22.)

for Preliminary Injunctive Relief (ECF No. 14), as well as a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 16).

**I.   Motion to Proceed IFP**

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2014). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted certified copies of his inmate trust account statements. These statements show Plaintiff has had no monthly deposits to his account, has carried no balance over the six month period preceding the filing of his Complaint, and that his current available balance is zero. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court GRANTS Plaintiff's Motion to Proceed IFP (ECF No. 16), declines to "exact" any initial filing fee because his trust account statement shows he "has no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary for the California Department of Corrections and Rehabilitation ("CDCR") to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

**II.     Request for Appointment of Counsel**

Plaintiff also requests that the Court to appoint him counsel because he is indigent and his "imprisonment will greatly limit his ability to litigate." (Pl.'s Mot., ECF No. 15 at 1.) However, there is no constitutional right to counsel in a civil case. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). While under 28 U.S.C. § 1915(e)(1), district courts have some limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion is rarely exercised and only under "exceptional circumstances." *Id.*; *see*

3

*also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires "an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Agyeman*, 390 F.3d at 1103, quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

Applying these factors to Plaintiff's case, the Court DENIES his Request to Appoint Counsel because a liberal construction of his original pleadings shows he is capable of articulating the factual basis for his claims. All documents filed by pro se litigants are construed liberally, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Moreover, FED. R. CIV. P. 8(e) requires that "[p]leadings . . . be construed so as to do justice."

The pleadings filed by Plaintiff to date demonstrate that while Plaintiff may not be a trained in law, he is capable of legibly articulating the facts and circumstances relevant to his claims, which are typical, straightforward, and not legally "complex." *Agyeman,* 390 F.3d at 1103. Therefore, neither the interests of justice nor any exceptional circumstances warrant the appointment of counsel in this case at this time. *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987); *Terrell*, 935 F.2d at 1017.

### III. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

#### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"

*Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

### B. Plaintiff's Allegations

Plaintiff was housed at the Richard J. Donovan Correctional Facility in 2015. (*See* Compl. at 6.) Plaintiff claims "watch floor officers started to harass and antagonize [Plaintiff] daily in forcing him to accept a cellmate" or they took him "to the hole." (*Id.*) Plaintiff showed them documentation from "Lancaster prison" which indicated Plaintiff had "issues with cellmates." (*Id.*) Plaintiff asked that they call Lancaster prison officials who would purportedly confirm Plaintiff "cannot get a cellmate." (*Id.*)

"For the following months, staff continued to harass and antagonize" Plaintiff with "retaliatory cell searches." (*Id.* at 6-7.) Plaintiff was "forced to seek/grab other means and channels" to "seek and obtain resolution." (*Id.*) Plaintiff alleges he is "afraid for his

life in the cell with other inmates" and is a "member of the mental health system." (*Id.*) Plaintiff filled out a "CDC 7362 Health Care form" on November 14, 2015 requesting to obtain mental health treatment. (*Id.*)

On December 10, 2015, a "big riot broke out on the RJD facility in day rooms, yard, kitchen, school classrooms on the yard, everywhere." (*Id.*) Plaintiff :almost got knocked out of [his] wheelchair due to inmates running all over the place." (*Id.*) Plaintiff alleges the riot was the result of "CDCR officials bringing inmates here at a medical facility who don't want to be housed with ADA, GOP, and CCCMs inmates." (*Id.*)

On December 22, 2015, another inmate was "forced" into Plaintiff's cell. (*Id.* at 8.) Plaintiff claims this inmate "choked [him] out." (*Id.*) The prison guard who "forced" this inmate into Plaintiff's cell "came back and took personal items from the cell because [Plaintiff] stated he [was] going to write him up." (*Id.*)

On April 4, 2016, Plaintiff was "taken to the Classification Committee by R. Flores." (*Id.*) Plaintiff informed Flores about his "past in cell experiences with cellmates at Lancaster" and at RJD. (*Id.*) Based on these experiences, Plaintiff requested "single cell" status. (*Id.*) Flores told Plaintiff he would "mention it" at the hearing. (*Id.*)

During the hearing, however, Flores "shut [Plaintiff] up" when he tried to speak and said that Plaintiff "lik[ed] to write staff up and that [Plaintiff] had no prior in cell incidents." (*Id.*) Plaintiff's request for a single cell was denied. (*See id.*)

On December 27, 2016, Flores "took [Plaintiff] to classification committee again." (*Id.* at 9.) Defendant A. Taylor-Garcia was also present but "once again Flores took charge of the meeting and made all the decisions over the Captain, CCII, and deemed [Plaintiff] double cell." (*Id.*) Flores also "put up" Plaintiff for work assignment. (*Id.*)

On January 24, 2017, Plaintiff filed another grievance against Flores but "they refused to process the 602 and went silent under oath of office." (*Id.* at 10.) Plaintiff also claims that "due to Defendant Flores misconduct of reprisals by putting [Plaintiff] for work assignment [Plaintiff] started to receive RVR/115 write up." (*Id.*)

In February, Plaintiff was "called to the program office" by Lieutenant Canedo for a "115 hearing." (*Id.*) Plaintiff told Canedo that he is "unassigned, limited duty, and cannot be assigned, and request Canedo postpone the hearing so Dr. Hodges could verify what [Plaintiff] is saying the next day." (*Id.*) Canedo told Plaintiff that he had spoken to "seven nurses and they don't know what [Plaintiff is] talking about and is finding [Plaintiff] guilty." (*Id.*)

In the following months, there was "more harassment, cell searches, and another inmate was forced" into Plaintiff's cell. (*Id.*) Plaintiff was "again choked out by said cell mate." (*Id.*)

On November 19, 2018, Plaintiff was "again called to the program office" by Canedo for "another 115/RVR hearing." (*Id.*) Plaintiff asked Canedo to call Dr. Hodges and claims Dr. Hodges informed Canedo that Plaintiff "cannot be assigned." (*Id.*) Plaintiff alleges Canedo "got upset, hung up the phone, and stated that no doctor can tell CDCR what to do and he is finding [Plaintiff] guilty." (*Id.*)

Plaintiff was "again taken to classification committee" on January 16, 2019. (*Id.* at 12.) Defendants Taylor-Garcia, Martinez, and Flores were present at the meeting and Flores again "deemed [Plaintiff] double cell." (*Id.*) Plaintiff asked Taylor-Garcia and Martinez to contact Dr. Hodges to "verify the facts concerning his unassigned limited duty before any final decision is made." (*Id.*)

Plaintiff claims that he lives in "fear and depression not knowing when he will be attacked by these inmates" at RJD. (*Id.* at 13.) Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. (*See id.* at 18.)

**C.    42 U.S.C. § 1983**

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks

and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D. Individual Causation

As an initial matter, Plaintiff's Complaint fails to contain any factual allegations against Defendants Covello or Juarez whom he claims violated his constitutional rights and contains no "further factual enhancement" which describes how, or to what extent, these individuals became aware of, or were actually aware of, any alleged constitutional violation. "Because vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).

"Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988), citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). There are no factual allegations linking Defendants Covello or Juarez to any of his claims regarding alleged constitutional violations.

Thus, for these reasons, the Court finds that Plaintiff's claims against Covello and Juarez must be dismissed for failing to state a claim upon which relief may be granted.

### E. Failure to Protect

The Court construes Plaintiff's request to reside in a single cell as a claim of failure to protect him from harm by other inmates arising under the Eighth Amendment. Plaintiff claims that the denial of single cell status, while housed at RJD, has caused him

to live in "fear and depression not knowing when he will be attacked by these inmates" at RJD. (Compl. at 13.)

Prison officials have a duty under the Eighth Amendment to avoid excessive risks to inmate safety. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a claim under the Eighth Amendment, Plaintiff must allege Defendants were "deliberate[ly] indifferen[t]" to "conditions posing a substantial risk of serious harm." *Id.* Deliberate indifference is more than mere negligence, but less than purpose or knowledge. *See id.* at 836.

A prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Plaintiff references on two occasions that he was "choked" by his cell mate but he offers no factual allegations that would suggest that any of the named Defendants had any involvement or knowledge of these incidents. (*See* Compl. at 10.) The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff must allege which Defendant purportedly knew of a serious risk to Plaintiff's safety and deliberately ignored that risk. Accordingly the Court finds that Plaintiff offers no factual allegations that Defendants had any knowledge, or should have known, that Plaintiff's cellmate posed a risk to Plaintiff. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (deliberate indifference requires showing of "more than a mere suspicion that an attack will occur."); *Hernandez v. Schriro*, 2011 WL 2910710, at *6 (D. Ariz. July 20, 2011) ("[w]hile theoretical risk is always possible, *Farmer* requires more—'conditions posing a substantial risk of serious harm.'") (citation omitted)).

///

9

3:19-cv-02444-JAH-MDD

In addition, a review of Plaintiff's Complaint indicates that Plaintiff does not provide any factual allegations of suffering a physical injury while incarcerated at RJD. Plaintiff cannot recover monetary damages for a "mental or emotional injury" without a "prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).

Therefore, the Court finds that Plaintiff's Eighth Amendment claims must be dismissed for failing to state a claim upon which relief may be granted.

### F. Due Process claims

Plaintiff also alleges that his due process rights were violated during his disciplinary hearings. (*See* Compl. at 9-11.) The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

10

3:19-cv-02444-JAH-MDD

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

Here, Plaintiff's Complaint is devoid of any allegations that would show that he suffered an "atypical and significant hardship" as a result of his disciplinary hearings. Therefore, the Court finds that Plaintiff's Fourteenth Amendment due process claims must be dismissed for failing to state a claim upon which relief can be granted.

### G. Retaliation claims

The Court finds Plaintiff's Complaint contains First Amendment allegations against Flores sufficient to survive the "low threshold" for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm,* 680 F.3d at 1123; *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

/ / /

### H. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his First Amendment retaliation claim against Flores only; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claim against Flores, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint and dismiss the remaining claims and defendants.

## IV. Motion for Preliminary Injunction

Plaintiff has also filed a "Order to Show Cause for a Preliminary Injunction & Temporary Restraining Order." (Pl.'s Mot., ECF No. 14 at 1.) In this Motion, Plaintiff claims the named Defendants, all of whom are RJD officials, are "creating a hostile living condition that endangered the safety and lives" of RJD inmates. (*Id.*)

Rule 65 of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." FED. R. CIV. P. 65(a)(1). Plaintiff's Motion for injunctive relief does not comply with Rule 65(a)'s important procedural notice requirement because he has not shown that either his Complaint or his Motion have been served on any named Defendant.

Moreover, even if Plaintiff had properly served Defendants with notice of his Motion, it wholly lacks merit. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

As set forth in detail above, the Court has found that a majority of Plaintiff's Complaint fails to state a claim upon which relief can be granted. Therefore, Plaintiff has necessarily failed to show, for purposes of justifying preliminary injunctive relief, any likelihood of success on the merits of his claims. *Id.*; *see also Asberry v. Beard*, Civil Case No. 3:13-cv-2573-WQH JLB, 2014 WL 3943459, at *9 (S.D. Cal. Aug. 12, 2014) (denying prisoner's motion for preliminary injunction because his complaint was subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and therefore he had not shown he was "likely to succeed on the merits" of any claim, that "the balance of equities tip[ped] in his favor," or the issuance of an injunction would serve the public interest) (citing *Winter*, 555 U.S. at 20).

Moreover, as Plaintiff is no longer housed at RJD, the claims for injunctive relief against RJD Defendants are moot in light of his transfer to a different institution. *See Dilley v. Gunn*, 64 F.3rd 1365, 1368 (9th Cir. 1995) (An inmate's transfer to a different prison while conditions of confinement claims are pending moot any claims for injunctive relief.)

For these reasons, Plaintiff's Motion for Injunctive Relief (ECF No. 14) must be DENIED.

## VI. Conclusion and Order

For all the reasons explained the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DENIES** Plaintiff's Motions to Appoint Counsel and for Preliminary Injunction (ECF Nos. 14, 15).

5. **DISMISSES** all claims against Defendants Covello, Juarez, Anderson, Martinez, Canedo, Taylor, and Garcia pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the First Amendment retaliation claim against Flores only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

7. **DIRECTS** the Clerk of Court to mail to Plaintiff, together with this Order, a blank copy of the Court's form "Complaint under the Civil Rights Act, 42 U.S.C. § 1983" for his use in amending.

Dated: February 26, 2020

HON. JOHN A. HOUSTON
United States District Judge