1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11   RICARDO JACKSON                        Case No.:  3:19-cv-02444-JAH-MMP
     CDCR #AK-4312,
12                                          **ORDER GRANTING DEFENDANTS'**
                                Plaintiff,  **MOTION TO DISMISS**
13                                          **PLAINTIFF'S FIRST AMENDED**
                                            **COMPLAINT [ECF No. 57]**
              vs.
14

15

16   C/O MARTINEZ; A. CANEDO;
     A. TAYLOR-GARCIA; R. FLORES;
17   P. PLASCNCIA; M. CARILLO,

18                              Defendants.

19

20

21

22        Ricardo Jackson, ("Plaintiff"), currently incarcerated at the California Health Care

23   Facility located in Stockton, California is proceeding pro se and in forma pauperis ("IFP")

24   in this civil rights action pursuant to 42 U.S.C. Section 1983.  (ECF No. 45, FAC.)  Plaintiff

25   alleges that Defendants, prison officials at the Richard J. Donovan Correctional Facility

26   ("RJD") violated Plaintiff's First Amendment rights to be free from retaliation.   (*See*

27   *generally* FAC.)

28

Currently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC"). (*See* ECF No. 57.) Defendants contend that Plaintiff fails to state a claim upon which relief may be granted or, alternatively, that Plaintiff's FAC should be dismissed because it violates Federal Rules of Civil Procedure 18(a) and 20(a). (*See generally id.* at 2.) In addition, Defendants contend that the Eleventh Amendment bars Plaintiff's claims for money damages against Defendants in their official capacity. (*See id.*)

A briefing schedule was issued and Plaintiff was informed that he was to file his Opposition by March 15, 2023. (*See* ECF No. 59.) Plaintiff later filed four motions for extensions of time to file an opposition which were all granted by the Court. (*See* ECF Nos. 60-63, 64, 67-69, 71.) The final order granting Plaintiff's request directed Plaintiff to file his Opposition by August 21, 2023. That date has long since passed and Plaintiff has not sought any further extensions of time nor has he filed an opposition.

Having carefully considered Plaintiff's First Amended Complaint and the parties' brief, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

## I.   Background

### A.  Plaintiff's Allegations

On December 22, 2015, Plaintiff alleges that an inmate "was forced" into a cell with him. (*See* FAC at 5.) Plaintiff complained to an unnamed correctional officer who purportedly told Plaintiff he "must not ask him any questions." (*Id.*) Plaintiff told this unnamed correctional officer that he was going to "write him up for retaliation" and in response, this officer searched Plaintiff's cell and "illegally took property items from the cell." (*Id.*)

On April 4, 2016, Plaintiff appeared before Defendant Flores ("Flores") at a Classification Committee hearing at which time Plaintiff claims he told Flores about the December 2015 cell incident. (*See id.*) Plaintiff alleges Flores told the committee that Plaintiff is "one who likes to file grievances against staff and officials." (*Id.*) Flores told

the committee that Plaintiff is "clear for double cell." (*Id.*)

Plaintiff appeared again before the classification committee on December 27, 2016. (*See id.* at 7.) Flores again presided over the hearing and again "deem[ed] [Plaintiff] double cell clear." (*Id.*) Plaintiff filed a grievance against Flores on January 14, 2017 but "it went unanswered." (*Id.*)

On February of 2017, Defendant Canedo ("Canedo") called Plaintiff to the program office for a "RVR/115 hearing" for which Canedo was the hearing officer. (*Id.*) Plaintiff alleges Canedo said to him "oh, so you're the inmate who likes to file grievances against staff and officials?" (*Id.* at 8.) Canedo asked Plaintiff if he had any witnesses for his hearing and Plaintiff informed him that "Dr. John Hodges" is his witness and requested that he be present at the hearing." (*Id.*) However, Canedo informed Plaintiff that he was going to find him guilty, that he had "spoken to seven nurses, and they told him they don't know what Plaintiff Jackson is talking about." (*Id.*) Plaintiff was assessed a thirty (30) day loss of privileges. (*See id.*)

Two years later, on February 12, 2018, Plaintiff's cell was searched and "several personal items were taken from Plaintiff's cell" in retaliation for filing grievances. (*Id.* at 9.) When Plaintiff discovered items were missing, he notified Sergeant Keener[1] of the missing items. (*See id.*) He claims Keener told him that she would "check on all the items/property taken" but she "never did." (*Id.*) Plaintiff filed a grievance seeking the return of the property but received no response. (*See id.*)

On November 19, 2018, Canedo called Plaintiff to the program office for "another RVR/115 hearing" on the "same issue for not showing up for job assignments." (*Id.* at 10.) Plaintiff claims Canedo told him "I remember you, you're the inmate who likes to write staff up." (*Id.*) Plaintiff asked Canedo to again call Dr. Hodges as his witness. (*See id.*) Canedo called Dr. Hodges and asked him about Plaintiff's "limited duty unassigned

---

[1] Keener is not a named Defendant.

status." (*Id.*)  Dr. Hodges told Canedo that Plaintiff has a "permanent disability, limited duty, and unassigned" and he is "high risk medical and cannot be assigned." (*Id.*)  This purportedly caused Canedo to get "upset and rudely hung up the phone on doctor" and told Plaintiff he was finding him guilty." (*Id.*)  Plaintiff lost "good time credit" as a result of the guilty finding.  (*Id.* at 11.)

On February 15, 2019, there was a riot at RJD.  (*See id.* at 12.)  Plaintiff alleges prison officials "ignore the serious risk of danger to inmates with disabilities who can get hurt easily." (*Id.*)  Plaintiff claims as a result, he lives "every day not knowing and wondering when and what is going to happen to us." (*Id.* at 13.)

On January 16, 2019, Plaintiff was called to the program office by Defendant A. Taylor-Garcia ("Taylor-Garcia") for a classification committee hearing.  (*See id.*)  Plaintiff told Taylor-Garcia that the information she had about him was "not correct" and it was false information prepared by Flores and Canedo.  (*Id.*)  Plaintiff again asked for Dr. Hodges to be called by Taylor-Garcia but she refused to do so.  (*See id.* at 14.)  Plaintiff requested that Defendant Martinez ("Martinez"), who is Taylor-Garcia's supervisor, also call Dr. Hodges.  (*See id.*)

Defendant Plasencia ("Plasencia") called Plaintiff to her office and told him that it "was time for Plaintiff's annual classification committee hearing." (*Id.* at 20.)  Plaintiff told Plasencia about his "past in-cell incidents which includes physical assault and battery in the cell by cellmates." (*Id.*)  Plasencia was also informed that Plaintiff "cannot be assigned to any work program." (*Id.*)  Plaintiff also gave Plasencia "documentation signed by Dr. John Hodges that clearly stated that Plaintiff has a permanent disability." (*Id.*)  On December 10, 2020, Plaintiff appeared before the classification committee.  Defendant Carrillo ("Carrillo") was "head of the hearing" and Plasencia was also present.  (*Id.* at 21.)  Plasencia told Plaintiff that she is "putting [him] up for transfer" and he is "clear for double cell and dorm living." (*Id.*)  Plaintiff claims Carrillo did "nothing to stop Plasencia's illegal conduct" which is "in deliberate indifference toward [Plaintiff's] safety." (*Id.* at 24.)

Plaintiff seeks injunctive relief, compensatory damages of $50,000 against each Defendant, and punitive damages of $50,000 against each Defendant.  (*See id.* at 41.)

## II.   Procedural History

Plaintiff initially filed this action in the Northern District of California.  (*See* ECF No. 1.)  On December 18, 2019, United States District Judge Edward J. Davila determined that the events giving rise to this action occurred at RJD and transferred the matter to this Court.  (*See* ECF No. 17.)  This Court granted Plaintiff's motion to proceed IFP and dismissed all of his claims, with the exception of his First Amendment retaliation claim against Defendant Flores, in his initial Complaint sua sponte pursuant to 28 U.S.C. Sections 1915(e)(2)(B) and 1915A, concluding that Plaintiff failed to state a claim for which relief may be granted as to his Eighth and Fourteenth Amendment claims, and granted leave to amend to cure the deficiencies identified.  (*See* ECF No. 23.)  Plaintiff was given the option to either file an amended complaint to correct all the deficiencies of pleading identified by the Court or notify the Court of his intention to proceed as to his First Amendment claim against Defendant Flores only.  (*See id.* at 14.)

Instead of initially choosing either option, Plaintiff filed a Notice of Appeal to the Ninth Circuit Court of Appeals.  (*See* ECF No. 24.)  The Ninth Circuit found that a "review of the record suggests that this court may lack jurisdiction over the appeal because the February 20, 2020 order challenged in the appeal may not be final or immediately appealable." (*See* ECF No. 27) (citation omitted.)  The appeal was dismissed on September 2, 2020 due to Plaintiff's failure to prosecute.  (*See* ECF No. 35.)

Plaintiff later sought three extensions of time to file an amended complaint which were granted by the Court.  (*See* ECF Nos. 34, 36, 38-39.)  Plaintiff was given until January 10, 2021 to file his amended complaint.  (*See* ECF No. 39.)  Ultimately, the Court issued an Order to Show Cause (OSC) requiring Plaintiff to provide an explanation for failing to timely file an amended pleading or his action would be dismissed  for failing to prosecute. (*See* ECF No. 43.)  Plaintiff responded to the OSC and the Court permitted him to file his FAC on April 7, 2022.  (*See* ECF Nos. 43-46.)

The Court performed the required *sua sponte* screening, dismissed his Eighth and Fourteenth Amendment claims, as well as all claims against Defendants Covello, Juarez, and Anderson, for failing to state claim and without leave to amend pursuant to 28 U.S.C. Sections 1915(e)(2)(B) and 1915A.  (ECF No. 47.)   The Court found, however, that Plaintiff's FAC contained First Amendment retaliation allegations against Canedo, Taylor-Garcia, Flores, Plascencia, and Carillo sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. Sections 1915(e)(2)(B) and 1915A.  (*See id.*)   Accordingly, the Court directed the U.S. Marshal's service to effect service on Plaintiff's behalf.  (*See id.*)

### III.        Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, 207 F. Supp. 3d 1107, 1114 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.) However, exhibits that contradict the claims in a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims.") (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts "are not required to

accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))); *see also Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" to determining whether the complaint states a claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962,

969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## IV.    Discussion

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

### A.    First Amendment

All Defendants move to dismiss Plaintiff's First Amendment retaliation claims on the ground that he failed to state a claim as to any Defendant.  (*See* Defs. Memo of P&As, EF No. 57 at 12.)  To state a claim for retaliation in violation of the First Amendment, Plaintiff must allege that: (1) he was subject to "adverse action" by a state actor, (2) because he engaged in (3) "protected conduct," and (4) that the adverse action "chilled [his] exercise of his First Amendment rights," and (5) "the action did not reasonably advance a legitimate correctional goal."  *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).  Protected conduct includes filing prison grievances or litigation against prison officials.  *See id.* at 568.  In order to demonstrate that the adverse action was "because of" Plaintiff's protected conduct, he must allege that "his protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'"  *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).  Additionally, to allege that the adverse action did not "'advance legitimate goals of the correctional institution,'" Plaintiff must allege "in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution . . . .'"  *Watison v. Carter*, 668 F.3d 1108, 1114-15 (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984) (internal citations omitted)).

### 1.   Defendant Flores

Defendant Flores argues that Plaintiff has not alleged that his filing of inmate grievances "was the substantial or motivating factor" for the classification committee hearings that denied Plaintiff single cell status and he does not allege "facts showing that the findings at the April 4 or December 27 classification committee hearings did not advance a legitimate correctional goal." (ECF No. 57 at 13-14.)

Plaintiff alleges that he appeared before Defendant Flores at a Classification Hearing on April 4, 2016 at which time he told Defendant Flores about an incident that occurred in December of 2015. (*See* FAC at 5.) Specifically, Plaintiff informed Defendant Flores that an inmate had been "forced" into a cell with him and when Plaintiff complained to an unnamed correctional officer, this officer retaliated against Plaintiff by searching his cell and taking his personal property. (*See id.*)

At this hearing, in response to Plaintiff's allegations, Defendant Flores purportedly told the committee that Plaintiff is "one who likes to file grievances against staff and officials." (*Id.*) Defendant Flores then cleared Plaintiff to be housed in a double cell. (*See id.*) Plaintiff also appeared before the classification committee on December 27, 2016. (*See id.* at 7.) Flores again presided over the hearing and again "deem[ed] [Plaintiff] double cell clear." (*Id.*)

Defendant Flores argues that Plaintiff has not alleged a retaliatory motive or the absence of a legitimate correctional goal for the actions Defendant Flores took. Specifically, Defendant Flores argues Plaintiff cannot allege a retaliation claim against him because he has not alleged that "Flores called or summoned the April 4 or December 27 hearings because of [Plaintiff's] alleged filing of grievances." (ECF No. 57 at 13.) In addition, Defendant Flores argues that Plaintiff is required to show that the challenged action did not advance a legitimate correctional goal and he failed to do so. (*Id.* at 14, citing *Rizzo*, 778 F.2d at 532.)

As noted above, Plaintiff has not filed a response to any of Defendants' arguments. Nevertheless, the Court will address both of Defendant Flores' arguments. While the Court

agrees with Defendant Flores that there are no allegations that Plaintiff was summoned to these classification hearings because Plaintiff had filed grievances, a liberal construction of Plaintiff's claims would show that Plaintiff is not alleging that the hearing itself was a retaliatory action but he is alleging that he was denied a single cell at the hearing because he had previously filed grievances.

To allege facts sufficient to demonstrate a retaliatory motive, Plaintiff must demonstrate that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim,* 584 F.3d at 1271. This requires Plaintiff to allege direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR,* 647 F.3d 870, 882–83 (9th Cir.2011); *accord, Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir.2014).   In addition to alleging Defendant Flores' knowledge of Plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual.  *McCollum,* 647 F.3d at 882 (quoting *Allen v. Iranon,* 283 F.3d 1070, 1077 (9th Cir.2002)).

Plaintiff has attached the Classification Committee Chrono for the hearing that was conducted on April 4, 2016 to his FAC. (*See* Ex. E, ECF No. 45-1 at 28.)  According to this chrono, this hearing was conducted because it was Plaintiff's "annual review" and it states that Plaintiff "was screened for single cell housing needs and does not meet the criteria." *Id.*  Simply finding that Plaintiff is not eligible for single cell housing, by itself, does not support an inference that this decision was made in retaliation for Plaintiff filing administrative grievances.  Plaintiff alleges that Defendant Flores remarked during the hearing that Plaintiff was known to file grievances against officials but he fails to allege sufficient additional facts that would link those comments to the decision to deny single cell housing.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.  Here, the Court finds that Plaintiff has failed to allege facts sufficient to show that a plausible link exists between the alleged comments and the actions taken by the classification committee.

Even if Plaintiff were able to allege facts to show a causal link between Defendant Flores' comments and the denial of single cell status, Plaintiff has not met his burden to allege facts sufficient to show that the denial of single cell status did not advance a legitimate correctional goal.  Plaintiff alleges that Defendant Flores "made deliberate false and misleading statements on record" that Plaintiff "has no history of in cell violence and is clear for double cell, copy of classification chrono attached."  (FAC at 6, citing Ex. E, ECF No. 45-1 at 28.)  The Court construes this to be an attempt on Plaintiff's behalf to demonstrate that there was not a legitimate penological goal when Defendant Flores denied Plaintiff single cell status.  However, the chrono cited by Plaintiff does not contain any statement that he did not have a history of in-cell violence.   (*See* ECF No. 45-1 at 28.)

Defendants correctly assert that Plaintiff has not alleged plausibly of the absence of a legitimate correctional purpose for their actions, which appear to be consistent with CDCR regulations.  Defendants point to CDCR regulations that provide that "all inmates are expected to double-cell."  (ECF No. 57 at 14 citing 15 Cal. Code Reg. § 3269 ("All inmates shall be assigned to double-cell housing" and they are "not entitled to single-cell housing, a housing location of choice, or a cellmate of their choice.").)  Plaintiff has set forth no plausible allegation that the decision to house him in a double cell did not serve a legitimate correctional goal.  *See Rizzo*, 778 F.2d at 532.

Accordingly, Defendants' Motion to Dismiss the First Amendment retaliation claims against Defendant Flores is **GRANTED**.

### 2.    Defendant Canedo

Defendant Canedo argues there are insufficient facts to show a causal connection between any action on his part and the alleged retaliatory actions taken against Plaintiff.  (*See* ECF No. 57 at 14-15.)  In addition, to the extent that Plaintiff suggests there was no legitimate reason to issue the RVRs against him, the evidence he submits in support of his

FAC shows that there was "some evidence" to support the issue of the RVRs.  (*See id.* at 15.)   Finally, Defendant Canedo argues that Plaintiff "has not and cannot allege facts sufficient to show that the February 2017 and November 2018 RVRs did not advance a legitimate penological goal."  (*Id.*)

Defendant Canedo was a hearing officer for an "RVR/115" hearing in February of 2017.  (FAC at 7.)  Defendant Canedo purportedly said to Plaintiff "oh, so you're the inmate who likes to file grievances against staff and officials?"  (*Id.* at 8.)   Plaintiff was found guilty of the RVR violation and was assessed a thirty (30) day loss of privileges. (*See id.*)

A few months later, on November 19, 2018, Defendant Canedo called Plaintiff to the program office for "another RVR/115 hearing" on the "same issue for not showing up for job assignments."  (*Id.* at 10.)  Plaintiff claims Canedo told him "I remember you, you're the inmate who likes to write staff up."  (*Id.*)  Plaintiff asked Canedo to call Dr. Hodges as his witness.  (*See id.*)  Canedo called Dr. Hodges and asked him about Plaintiff's "limited duty unassigned status."  (*Id.*)  Dr. Hodges told Canedo that Plaintiff has a "permanent disability, limited duty, and unassigned" and he is "high risk medical and cannot be assigned."  (*Id.*)  This purportedly caused Canedo to get "upset and rudely hung up the phone on doctor" and told Plaintiff he was finding him guilty."  (*Id.*)

The Court agrees with Defendant Canedo that Plaintiff's allegations do not sufficiently allege facts that his actions in finding Plaintiff guilty of the disciplinary infractions were motivated by Plaintiff's protected conduct.  Plaintiff must show that the exercise of his First Amendment rights was a "substantial" or "motivating" factor behind Defendant Canedo's conduct.  *Soranno's Gasco, Inc*, 874 F.2d at 1314.

Here, Defendants' point to Plaintiff's own allegations and exhibits to show that there is evidence that Plaintiff "committed the underlying rules violation."  (ECF No. 57 at 15.) Plaintiff acknowledges at the first RVR hearing that Defendant Canedo spoke to seven nurses to determine whether he had failed to show up to work.  (ECF. No. 45 at 8.) Moreover, this is the same allegation made in the grievance filed by Plaintiff with regard

to this hearing.  Specifically, Plaintiff writes that he told Defendant Canedo that he did not have a job assignment but Canedo told him that "he had spoken to seven nurses who told him that [Plaintiff] had no medical record or chrono about medical issues."  (ECF No. 45-1 at 43, CDCR 602-A Inmate/Parolee Appeal Form, Log. No. 17-1599, dated Feb. 6, 2017.)

Plaintiff's factual allegations and exhibits do not support a finding that he has plausibly stated a retaliation claim against Defendant Canedo because his claims that Defendant Canedo's motivations in finding him guilty of the RVRs are conclusory.  These claims fail to establish a "'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (citation omitted).  Retaliatory motive must be the "but-for" cause of the injury in that "the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Id.*  Plaintiff's own allegations show that Defendant Canedo consulted with other staff officials before ruling on Plaintiff's RVR and there is no allegation that he made the rulings solely based on his comment that he was aware that Plaintiff had filed administrative grievances in the past.

Accordingly, Defendants' Motion to Dismiss the First Amendment retaliation claims against Defendant Canedo is **GRANTED.**

### 3.   Defendants Taylor-Garcia, Martinez, Plascencia and Carrillo

Defendants Taylor-Garcia, Martinez, Plascencia and Carrillo move to dismiss Plaintiff's retaliation claims against them because he does not allege that any of their actions were "because of his filing of inmate grievances against prison staff and officials," there is no allegation that they took any "adverse action" against him, and he fails to allege that the actions they took "did not advance any legitimate correctional goal."  (ECF No. 57 at 16-19.)

Plaintiff alleges that Defendant Taylor-Garcia presided over a classification committee hearing on January 16, 2019.  (ECF No. 45 at 13.)  During this hearing, Plaintiff claims he told Defendant Taylor-Garcia that the information she was relying on was "not correct" and it was false information prepared by Flores and Canedo.  (*Id.*)  Plaintiff asked

Defendant Taylor-Garcia to call Dr. Hodges but she refused to do so.  (*See id.* at 14.) Plaintiff requested that Defendant Martinez ("Martinez"), who is Taylor-Garcia's supervisor, also call Dr. Hodges.  (*See id.*)

Defendant Plascencia called Plaintiff to her office and told him that it "was time for Plaintiff's annual classification committee hearing." (*Id.* at 20.)  Plaintiff told Plascencia about his "past in-cell incidents which includes physical assault and battery in the cell by cellmates." (*Id.*)  Plascencia was also informed that Plaintiff "cannot be assigned to any work program." (*Id.*)  Plaintiff also gave Plascencia "documentation signed by Dr. John Hodges that clearly stated that Plaintiff has a permanent disability." (*Id.*)  On December 10, 2020, Plaintiff appeared before the classification committee.  Defendant Carrillo ("Carrillo") was "head of the hearing" and Plascencia was also present.  (*Id.* at 21.) Plascencia told Plaintiff that she is "putting [him] up for transfer" and he is "clear for double cell and dorm living."  (*Id.*)  Plaintiff claims Carrillo did "nothing to stop Plascencia's illegal conduct." (*Id.* at 24.)

Here, Plaintiff's retaliation claims against these Defendants must be dismissed because he fails to allege any facts that any of these Defendants took any action against him because he engaged in protected conduct. As stated above,  Plaintiff must allege that "his protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'" *See Brodheim*, 584 F.3d at 1271.  The Court cannot find that Plaintiff has alleged a causal connection if he has failed to even allege that they were aware that he had previously filed grievances or engaged in any protected conduct.

Accordingly, Defendants' Motion to Dismiss the First Amendment retaliation claims against Defendants Taylor-Garcia, Martinez, Plascencia and Carrillo is **GRANTED.**

### B.   Eleventh Amendment

Defendants argue that Plaintiff's claim for monetary damages against them in their official capacity is barred by the Eleventh Amendment.  (*See* ECF 57 at 23-24.)  While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in

their official capacities, *Will v. Michigan Dep't of State Police*, 4[91] U.S. 58, 66 (1989), it does not bar damage actions against state officials sued in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992).

When a state actor is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997). Plaintiff brings this § 1983 suit against Defendants in both their individual and official capacities. (*See* ECF No. 45 at 2.) The Supreme Court has made it clear that a plaintiff can establish personal liability in a section 1983 action simply by showing that each official acted under color of state law in deprivation of a federal right. *Hafer*, 502 U.S. at 25.

Consequently, the Court **GRANTS** Defendants' Motion to Dismiss on Eleventh Amendment grounds.

## V. Conclusion and Orders

Accordingly, the Court:

(1)     **GRANTS** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for failing to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) (ECF No. 57);

(2)     **DENIES** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 18(a) and 20(a) as moot.

(3)     **DIRECTS** the Clerk of Court to enter judgment as to all Defendants and close the file.

**IT IS SO ORDERED**.

Dated:  January 8, 2024

_____
Hon. John A. Houston
United States District Judge

3:19-cv-02444-JAH-MMP